HARLAN CANADA'S APPEAL FROM PROBATE.

It is not necessary that a witness to a will should know that it is a will. The object of his attestation is that he may be able to testify that the testator put his name upon the identical piece of paper upon which he puts his own.

In determining whether a testator has been induced by undue influence or fraud to execute a will, the state of his feelings towards the persons to whom he has given his property may be inquired into, and upon such inquiry his declarations and acts before and after the execution of the will may be proved. Such declarations and acts will have less weight as they are remoter from the time of such execution, but the jury are to determine as to their weight.

Declarations and acts of the testator after the execution of such a will are admissible for the purpose of showing that he did not understand that he had executed it.

Where, for the purpose of showing a settled dislike on the part of a testator towards a son to whom by such a will he had given the whole of his property, declarations of the testator had been admitted in evidence, to the effect that his son had turned him out of doors and compelled him to sleep in out-buildings, and had refused to assist him in severe weather in taking care of his cattle, he being over ninety years of age, it was held that it might be shown in support of the will that these declarations were untrue.

Evidence that such declarations had no foundation in fact would tend to show that they were not in fact made, and that, if made, they were not proof of so great a degree of dislike as if they were true.

A petition in chancery, signed by the testator with his own hand, brought against the son and his wife alleging that the son had procured from him by fraud a deed of certain real estate to the son's wife, held to be admissible on the part of the contestants of the will, to show the fact of litigation between the parties and the feelings of the testator towards his son.

And where the whole record in the case was offered in evidence, not for the purpose of proving the facts found by the decree, but only the fact of the litigation and the feelings of the testator, and the court instructed the jury that the record was to be taken for this purpose alone and not as proof of the facts found, it was held that the other party had no cause of complaint because the decree was allowed to go with the petition to the jury, though it had been specifically objected to.

APPEAL from a decree of a court of probate refusing probate of a will; taken to the Superior Court in Windham County. The case was tried to the jury before *Carpenter, J.*

The instrument was presented as the will of Erastus Canada, late of Champlin in Windham County, deceased, and was dated May 10th, 1879. By it the testator gave his whole property to Harlan Canada, the appellant, who was his son,

making him also sole executor. The will was not in the handwriting of the testator.

By a previous will, executed on the 8th of February, 1878, he had given one-fourth of his estate to the appellant, provided he presented no claim against his estate; one-half of his estate to his grandson, John E. Canada; fifty dollars to a nephew; and all the remainder of his estate to his great-grandchildren equally; making Lester Bill, of Champlin, sole executor.

The appellees claimed that the will of May 10th, 1879, was not legally executed as a will. Also that if legally executed it was obtained by fraud and undue influence practiced upon the testator by his son Harlan, aided by one Abel Palmer, one of the witnesses to the instrument. Also that the testator was mentally incapable of making a will at the date of the instrument.

The appellees offered evidence to prove, and claimed that they had proved, that Thomas Baldwin, whose name appeared on the instrument as a witness, was, at the time when the same was executed, very much intoxicated; that the testator did not publish and declare the instrument to be his will; that Baldwin was not informed by any one that the paper was a will; and that he did not know that it was a will, but was wholly ignorant of its nature and character.

Upon this point the court charged the jury substantially as requested by the appellees, that if Baldwin, from the effects of intoxication or from any other cause, was ignorant of the nature and character of the instrument he was signing, was not informed and did not know that it was intended as a will, but ignorantly put his name to it merely because he was told to, and without knowing what it was, and not comprehending the nature and character of the transaction, the document was not legally executed as a will. But that if at the time he was in a condition to know, and did in fact know, that the document he was witnessing was a will, although he may have forgotten it soon after, he was a competent witness, and the paper was in that respect legally executed. The appellant excepted to this instruction.

Canada's Appeal from Probate.

It was conceded that the will of February 8th, 1878, was properly executed and was operative unless revoked by the will in question. The appellees offered Mr. Bill, the executor in that will, as a witness, who testified that at an interview on the 6th day of May, 1879, between the testator, Harlan and himself, at which time he produced the will of February 8th, Harlan endeavored to persuade the testator to order him to deliver up the last-named will to him, the testator; but the testator refused so to do, and directed him, Bill, to keep the same.

Bill further testified that on the 13th day of June following he had another interview with the testator, at which they discussed the provisions of the will of February 8th. In this connection he testified that the testator said to him that he did not know but that they had been putting something upon the records against him, and requested him to examine the town records and see; which he did, and reported to the testator.

He further testified that at this interview the testator informed him that several years previous to that time he had signed a note of Harlan's as surety, payable to one Martin, for $200; that he feared it had never been paid, and that after his decease it would be presented and allowed against his estate; that he feared that the will of February 8th was not so drawn that, if it was so allowed, it would come out of Harlan's share as therein given; and directed him, Bill, to see Martin on the subject; which he did, and on the 16th day of June reported that there was such a note unpaid. And thereupon, after considerable discussion as to the construction of the will in this regard, the testator instructed him, if necessary, to prepare a codicil. A codicil was prepared, but the testator was too feeble to execute it.

On the day of his death, June 20th, the testator was informed by Bill that his pension papers had come. He replied, "They will do me no good now. You will have to settle my estate." And he informed him where he would find his bank book and valuable papers.

To the admission of these declarations of the testator in

evidence, the appellant objected. The court admitted them solely for the purpose of showing the condition of his mind and the state of feeling existing between himself and Harlan, and so restricted the evidence in the charge to the jury.

The appellees proved that the testator declared on sundry occasions that he had from time to time let Harlan have large sums of money, amounting in all to about $6,000; that Harlan had turned him out of doors, and had compelled him to sleep in out-buildings; that he had refused to assist him in the care of his cattle in severe cold weather, he being then more than ninety years of age; and that he had in various other ways treated him unkindly.

To meet this evidence the appellant offered to prove that these declarations were not true in fact. The appellees objected. The court ruled that the declarations were only admissible as tending to prove the condition of the testator's mind and his feelings toward his son; that the truth or falsity of the declarations was immaterial and collateral to the issue; and rejected the evidence. The appellant excepted.

The appellees offered in evidence the files and record of a bill in chancery brought by the testator against his son Harlan and his wife, and tried at the August term of the Superior Court, 1872. The petition in the cause was signed by the testator with his own hand, and alleged that Harlan had procured a deed of some real estate to be conveyed by the petitioner to the wife of Harlan at a time when he was sick and unable to transact business, and did not expect to recover, by deceitfully and fraudulently representing to him that he was executing a will.

The record showed that the allegations in the petition were found true, and that a decree was passed in favor of the petitioner. This evidence was offered for the purpose of showing that there had been litigation between the parties, and the feeling of the testator towards Harlan, and not for the purpose of proving the truth of the allegations contained in the petition, nor the fact that the court found them to be true. The appellant objected to the admission of the evidence. The court admitted it only for the purpose for which it was offered.

Thereupon the appellant objected specifically to the admission of the decree; but the judge said he would not separate the decree from the rest of the record, and admitted both. The petition was then read to the jury, but the finding of the court and the decree were not read, although formally laid in as evidence for the purpose above stated. The court then stated to the counsel, in the presence of the jury, that the record was not received for the purpose of proving the truth of the charges contained in it; and in the charge to the jury the court instructed them that the finding of the court and the decree passed in the cause were not evidence to prove, or as tending to prove, that Harlan procured the paper in question to be executed by fraud.

The jury returned a verdict for the appellees, and the appellant moved for a new trial for error in the rulings and charge of the court.

*E. B. Sumner* and *C. E. Searls*, in support of the motion.

1. The claim of the appellees and the charge of the court upon the question of the legal attestation of the will by the witness Baldwin, present the question whether knowledge on the part of all the attesting witnesses to a will, at the time of its execution, that the document witnessed by them is a will, is necessary to its validity. It will be noticed that it is not claimed but that the two other attesting witnesses knew that the document in question was a will when they witnessed it. It must then be assumed that, with the exception of Baldwin's lack of knowledge of the character of the instrument he witnessed, the will was properly executed. The suggestion of intoxication does not change the proposition, for the court expressly stated to the jury that if Baldwin did not "from any other cause" *know* that the paper was a will, it was not legally executed. We say that, by our statute, it is not necessary that all or any of the witnesses to a will should be informed or know that the document witnessed by them was a will or was intended by the testator as a will. The statute, neither in terms or by implication, requires this. It is of English origin, and in interpreting an English statute adopted

here, our courts will be governed by the construction given it by the English courts. *Adams* v. *Field*, 21 Verm., 257. Our statute, those of the several states, and the English statutes, in regard to the formalities to be observed in the execution of wills, are similar. The statutes of those states which require *publication* of the will and the decisions under them, have no application to this case. For the legal signification of "attestation," see *Grayson* v. *Atkinson*, 2 Ves., 456, and cases hereinafter cited; also Powell on Devises, 74. The English cases, without exception, sustain our claim. *Peate* v. *Ougly*, Comyns, 197; *Trimmer* v. *Jackson*, 4 Burn's Eccl. Law, 102; *Wyndham* v. *Chetwynd*, 1 Burr., 421; *Bond* v. *Seawell*, 3 id., 1775; *White* v. *Trustees of British Museum*, 6 Bing., 310; *Wright* v. *Wright*, 7 id., 457; *Ilott* v. *Genge*, 3 Curteis, 172. The decisions in Massachusetts are in harmony with and follow the English cases. *Dewey* v. *Dewey*, 1 Met., 349; *Hogan* v. *Grosvenor*, 10 id., 54; *Osborn* v. *Cook*, 11 Cush., 532; *Nickerson* v. *Buck*, 12 id., 332; *Tilden* v. *Tilden*, 13 Gray, 110. The Supreme Court of Maine holds the same doctrine. *Small* v. *Small*, 4 Greenl., 220. The Court of Appeals of New York maintained the same view until the law was changed by statute. *Brinkerhoff* v. *Remsen*, 8 Paige, 489. And the same may be said of the courts of Virginia. *Rosser* v. *Franklin*, 6 Gratt., 1; *Beane* v. *Yerby*, 12 id., 244. Also of South Carolina. *Verdier* v. *Verdier*, 8 Rich., 135. Also of Kentucky. *Sechrest* v. *Edwards*, 4 Metc., 163. The leading elementary books sustain this view. Swinburn on Wills, 27; 1 Jarman on Wills, 74, 121; 1 Redfield on Wills, 218; 2 Greenl. Ev., § 675; Bouvier Law Dict., *Wills*, § 7. Courts lean in favor of the due and legal execution of wills so as not to allow them to be defeated by slip of form, where the intention of the legislature has been complied with. 2 Best on Ev., 363; 1 Jarman on Wills, 75.

2. The declarations of the testator, with the exception perhaps of the interview of May 6th, 1879, were clearly inadmissible. The court admitted them "solely for the purpose of showing the condition of his mind and the state of feeling between himself and Harlan." It is difficult to see

in what manner either the condition of the testator's mind, or the feeling between himself and Harlan, existing a considerable time after the will was made, could affect the issue or have any relevancy to it. However that may be, the declaration of the testator that he did not know but they had been putting something on the records against him, could not show a state of feeling towards Harlan, as he was not referred to in the conversation; its only effect was to raise an inference in the minds of the jury that this "something" referred to the will. An attempt was made to restrict the application of this evidence, but its practical effect, and the real object of its introduction, were to impeach the will, no matter under what label it was presented to the jury.

3. The evidence offered by the appellant to prove that the declarations of the testator, that he had let Harlan have large sums of money, and that Harlan had from time to time treated him unkindly, were untrue in fact, should have been admitted. The principle governing the question is in all essentials identical with that in *Mills's Appeal from Probate*, 44 Conn., 484. The evidence was received for two purposes; first, to show the mental condition of the testator; second, to prove his feelings toward his son. If admissible for any purpose under the second head, it was to satisfy the jury that from his state of feeling toward his son it would be unreasonable to suppose that he could have made the will in question voluntarily and of his own free agency, and that therefore he must have been unduly influenced by his son at the time of its execution. *Denison's Appeal from Probate*, 29 Conn., 403. How better reconcile the seeming inconsistency between the act of the testator as seen in his will, and his utterances in regard to his son, than to show that the appellant had never received any money from his father and had never been guilty of the acts charged, and therefore the words of the testator, having no real foundation upon which to rest, could not be indicative of his real feeling toward his son, but were rather expressions let fall hastily in a temporary fit of passion, or uttered for the purpose of concealing from others the real relations between himself and his son, or for some other reason?

4. The decree in the case in chancery should not have been admitted for any purpose. The petition was the act of the testator, and perhaps was admissible for the purposes for which it was received. But the decree was not his act, was in no way expressive of his feeling, and was not needed to prove the fact of litigation between the parties. The jury could not escape a bias against the appellant, and a belief in the truth of the fact stated in the decree to have been established upon the trial.

*G. W. Phillips* and *J. L. Hunter*, contra.

1. The charge with regard to the effect of the ignorance of the witness Baldwin as to the character of the instrument he was attesting, was correct. It is necessary to the legal execution of a will that the witnesses be not ignorant of the nature and character of the instrument they are signing, but that they be informed and know that it is intended as a will; and where a witness puts his name to a paper in ignorance of what it is, and not comprehending the nature and character of the transaction, it is not a legal execution. The obvious purpose of calling such a number of witnesses about a testator in the solemn act of a final disposition of his estate, is to prevent imposition, and to insure the fact that he was of sufficient capacity to do the act, and understood what he was about. There must be some act or declaration of the person executing a will, imparting to the witnesses a knowledge of the act he is performing, unless perhaps they have the information from some other source. This is something distinct from what is called *publication*, and is reasonably required by our statute. These propositions are in harmony with the strong current of authorities; and indeed those relied upon by the appellant do not essentially controvert the position of the appellees. 1 Redfield on Wills, 214 to 224; 1 Jarman on Wills, 102; *O'Brien* v. *Gallagher*, 25 Conn., 231; *Adams* v. *Field*, 21 Verm., 257; *Dean* v. *Dean*, 27 id., 746; *Roberts* v. *Welch*, 46 id., 168; *Moodie* v. *Reid*, 7 Taunt., 355; *White* v. *Trustees of British Museum*, 6 Bing., 310; *Ross* v. *Ewer*, 3 Atkins, 159; *Watson* v. *Pipes*, 32 Miss., 451; *Swift* v. *Wiley*,

1 B. Monr., 116; *Cilley* v. *Cilley*, 34 Maine, 162.   Our statute upon the subject is as follows:—"No will shall be valid, &c., unless it be in writing; subscribed by the testator, *and attested by three witnesses*, all of them subscribing in his presence and in the presence of each other."   Gen. Statutes, p. 368, sec. 2; also p. 370, sec. 8.   The word " attested," as here used, means something more than the mere witnessing of a signature.   The form of attestation used in this state from time immemorial is in accord with this view.   By the decisions in this state, especially where a will is contested upon the question of mental capacity, the party opposing the will has a right to insist upon having all the subscribing witnesses called if they are living and within the jurisdiction.   Thus it becomes *imperative* in order to give evidence as to mental capacity, that in some way a communication be made to the witnesses, that the person executing the instrument intends the same as his will, and comprehends the nature and character of the transaction, and that they are there to attest to the fact.   So far as we have been able to ascertain, the precise question is a new one here; but we submit that the charge was in harmony with the views of the ablest jurists and elementary writers in this country and in England, and that it is in the interest of a sound administration of justice that such should be declared the law of the state.

2.   The declarations of the testator to Lester Bill, taken in connection with the concession that the will of February 8th, 1878, was operative unless revoked by the instrument in question, were admissible for the purpose of showing the condition of the testator's mind and the state of feeling between himself and his son Harlan.

3.   The declarations of the testator that he had from time to time let his son Harlan have about $6,000, that Harlan had turned him out of doors, &c., were offered and admitted only for the purpose of proving the condition of his mind and feeling toward his son.   To meet this testimony the appellant offered to prove that such declarations were not true.   We submit that the ruling in this part of the case, that the truth or falsity of the declarations was immaterial

and collateral to the issue, was correct, and that the testimony was properly rejected. The case of *Mills's Appeal from Probate*, 44 Conn., 484, does not in the least militate against this position.

4. The file and record in the bill in chancery under the very guarded restriction to the jury, was properly admitted. The evidence was offered for the purpose of showing that there had been litigation between the parties, and their consequent feeling; and not for the purpose of proving the truth of the allegations in the petition, nor the fact that the court found them to be true. As to all the declarations, the element in them which was not admissible was thoroughly eliminated from the case by the charge. 1 Redfield on Wills, 537, 546; note; *Comstock* v. *Hadlyme*, 8 Conn., 254; *Denison's Appeal from Probate*, 29 id., 399; *Matter of Johnson's Will*, 40 id., 588; *Robinson* v. *Hutchinson*, 26 Verm., 38; *Converse* v. *Wales*, 4 Allen, 512; *Shailer* v. *Bumpstead*, 99 Mass., 112; *Waterman* v. *Whitney*, 11 N. York, 157.

PARDEE, J. This is an appeal from the decision of a court of probate refusing probate of an instrument presented as the will of Erastus Canada, deceased. The jury having rendered a verdict for the appellees, the appellant filed a motion for a new trial.

Upon the trial the appellees, in support of their claim that the instrument was not legally executed as a will, offered evidence that Thomas Baldwin, whose name appeared on the instrument as a witness, was at the time when it was executed very much intoxicated; that the testator did not publish and declare the instrument to be his will; that Baldwin was not informed by any one that the paper was a will, and that he did not know that it was, but was wholly ignorant of its character. Upon the request of the appellees the court charged the jury that if Baldwin, from the effects of intoxication, or from any other cause, was ignorant of the nature and character of the instrument he was signing, and was not informed and did not know that it was intended as a will, but ignorantly put his name to it merely because he was told to

do so, without comprehending the nature and character of the transaction, the document was not legally executed as a will. To this charge the appellant took exception.

The statute (Gen. Statutes, p. 369, sec. 2,) requires a will to be "in writing, subscribed by the testator, and attested by three witnesses, all of them subscribing in his presence and in the presence of each other."

The charge declares the law to be that the signature of a testator to a will is not duly attested unless at the time of attestation the attesting witness knows that the instrument is a will. This attributes too much meaning to the word "attestation;" more than has been given to it by courts which have been called upon to define it where used in similar statutes.

The English statute, prior to its modification by 1st Victoria, sec. 9, chap. 26, required wills to be attested and subscribed in the presence of the devisor by three or four witnesses. In *Wyndham* v. *Chetwynd*, 1 Burr., 421, Lord Mansfield said: "Suppose the witnesses honest, how little need they know? They do not know the contents; they need not be together; they need not see the testator sign; if he acknowledges his hand it is sufficient; they need not know that it is a will." In *Bond* v. *Seawell*, 3 Burr., 1775, he had previously said that "it is not necessary that the testator should declare the instrument he executed to be his will." In *Wright* v. *Wright*, 7 Bing., 457, the marginal note is as follows: "A will of lands subscribed by three witnesses in the presence and at the request of the testator is sufficiently attested although none of the witnesses saw the testator's signature, and only one of them knew what the paper was." To the same effect is *White* v. *Trustees of the British Museum*, 6 Bing., 310. Perhaps the principle attained to its highest development in *Trimmer* v. *Jackson*, a case in King's Bench, reported in 4 Burn's Eccl. Law, 3d ed., 102, in which the attestation was held sufficient although the devisor, not content with withholding the truth from the witnesses concerning the contents or nature of the instrument executed, intentionally misled them by stating it to be a deed. A similar statute has

received the same interpretation in Massachusetts. *Dewey* v. *Dewey*, 1 Met., 349; *Hogan* v. *Grosvenor*, 10 Met., 54; *Osborn* v. *Cook*, 11 Cush., 532; *Nickerson* v. *Buck*, 12 Cush., 332; *Tilden* v. *Tilden*, 13 Gray, 110. And we believe that the same principle has been recognized in other states where the statutory requirement is attestation only, with no suggestion as to publication.

The primary reason for the presence of the witness is not that he has known the testator long or intimately; not that he is required to use or have any skill in detecting the presence of insanity or other forms of mental disease or weakness; not that he is to have any opportunity for discovering the fraudulent scheme which has culminated in the act of the testator. If the presence of one or three witnesses provides any degree of security against the procurement of a will from a competent testator by fraud, or against the procurement of one from a testator without mental capacity, it is an incidental benefit; it was not in the mind of the law; that only intended that the witness should be able, with a great degree of certainty at all times, possibly at a great length of time after his attestation, to testify that the testator put his name upon the identical piece of paper upon which he placed his own. He identifies the paper by the conjunction of the two signatures, not the character of the contents; only the paper, whatever the contents may prove to be.

The appellees, claiming that the will was the product of fraud practiced and undue influence brought to bear upon the testator by the appellant, Harlan Canada, his son and sole legatee named therein, introduced as a witness Lester Bill, who had been named as executor in a previous will executed by the testator on February 8th, 1878, which will would become operative upon the non-approval of the one in question. He testified that four days prior to the execution of the last will the appellant endeavored to induce the testator to order him, Bill, then present with the first will, to return it to him, the testator, and that the testator refused so to do and directed Bill to retain it. He also testified that on June 13th, 1879, being about a month subsequent to the execution

of the last will, the testator, in a conversation with him concerning the provisions of the first one, said that he did not know but that they had been putting something upon the records against him and requested the witness to examine the town records; and that the testator then told him that he had become surety for the appellant upon a note which he feared remained unpaid and would be presented and allowed as a claim against his estate; that if so presented and allowed he feared that the will of February, 1878, was not so drawn as to deduct the amount from the appellant's share; and that he requested the witness to inquire concerning the note. The witness testified that upon inquiry he found the note unpaid and so informed the testator. He also testified that on June 16th, 1879, after a discussion between himself and the testator as to the construction to be put upon the first will so far forth as the note was concerned, the testator instructed him to prepare a codicil, and that he did prepare one which failed of execution by reason of the feebleness of the testator. The witness also testified that four days later, on the day of the testator's death, he informed the latter that his pension papers had come; that the testator replied to him—"They will do me no good now; you will have to settle my estate;" and informed the witness where he would find his, the testator's, bank book and valuable papers.

The appellant objected to the admission of these declarations of the testator. The court received them solely for the purpose of showing the condition of his mind and the state of feeling existing between himself and the appellant, and so restricted the evidence in the charge to the jury.

Of course the declaration that he did not "know but they had been putting something upon the records against him," and the request of the witness that he should examine the town records, are not to be considered unless it is proven that the appellant is one of the persons therein referred to.

One of the admitted declarations was made four days prior, the others within forty days subsequent to the execution of the last will, the one in question. If the jury believe that in the first he expressed a desire that the first will should con-

tinue a living instrument and become operative at his death, and in the others repeated both a belief that it would and a desire that it should be so, with accompanying suggestions as to the necessity of a codicil thereto, that it might speak his mind with precision; or that he expressed a belief that by virtue of an appointment therein the witness would be the executor upon his estate, and as such pointed him to his bank book and other valuable papers; or that he manifested a degree of anxiety lest his estate should be made to pay the endorsed note, and the appellant thereby obtain a larger share thereof than he desired him to have; or that in the matter of the town records he gave evidence of a degree of distrust or dislike towards him—they may be led to infer that the testator had not knowingly put his name to an instrument which would utterly destroy the one to which he was striving to make an addition; or that he had not knowingly given the whole to a devisee whom he was striving to limit to a part; or that it is improbable that, in behalf of the appellant, he had knowingly excluded grandchildren and other claimants upon his bounty from any share in his estate.

In determining the question as to the mental capacity of a testator at the time of executing a will the law admits proof of his words and acts prior and subsequent to that point of time. Presumably the mind neither passes from light into darkness nor emerges from darkness into light instantly; presumably neither capacity nor incapacity is the condition of a moment only. The acts and words at and nearest to the time of execution may have the greater weight as evidence; diminishing in weight as time lengthens in each direction; the jury to determine when they cease to have any. The same rule obtains in determining the question as to like or dislike. There is no error in the reception and application of the declarations.

The appellees offered evidence tending to prove, and claimed to have proved, that on sundry occasions the testator made declarations to the effect that he had loaned money to the amount of $6,000 to the appellant; that the latter had turned him out of doors, and had compelled him to sleep in

outbuildings; that he had refused to assist him in the care of his cattle in severe winter weather, he, the testator, being more than ninety years of age; and that he had in various other ways treated him unkindly.   The court rejected evidence offered by the appellant for the purpose of proving that the declarations were false.

The court received and applied this evidence in part for the purpose of proving the testator's feelings towards his son. Of course, for this purpose they must be assumed to be the declarations of a person in possession of all his mental faculties.   This being so, proof that they were false was proof that the testator knew them to be so when he uttered them; and to whatever motive the jury might attribute them, they would very properly fail to find that back of the spoken falsehood there was really existing in the heart of the testator that degree of hatred towards the son which the wrongs and insults, actually suffered, would have engendered.   As the appellees left the testimony the words went to the jury with the point and sting of truth.   We think the appellant had the right to show that they were words only, intentionally false, and represented no more certainly than hatred of a slight degree—the question being simply as to like or dislike upon the part of the father.

Moreover, in another aspect, it was the right of the appellant to prove that the testator did not make the declarations; and if he proves that he did not borrow the money, never turned his father out of doors, and never refused him assistance, he has done much to render it improbable that the father said what is imputed to him.   Presumably a sane father will not falsely charge such conduct upon a son.

The appellees offered in evidence the files and record of a bill in chancery brought by the testator against the appellant and his wife in 1872.   The testator signed the petition with his own hand; in it he alleged that the appellant had procured from the testator a deed of certain real estate in favor of his, the appellant's, wife at a time when he, the testator, was sick and unable to transact business, the appellant deceitfully and fraudulently representing to the testator that he was executing

a will.   The record showed that the court found this allega-
tion to be true and passed a decree in favor of the testator.
The petition and decree were offered and received for the
purpose of showing that there had been litigation between
the parties and the feelings of the testator towards the appel-
lant, and not for the purpose of proving the truth of the
allegations, nor for the purpose of proving that the court found
them to be true.   The petition was read to the jury; the
finding and decree of the court were not read, although for-
mally laid in as evidence for the purpose stated.   The court
stated to the counsel and instructed the jury that the record
was not received for the purpose of proving the truth of the
charges contained in the petition, and that neither the
finding nor decree were in this cause evidence proving or
tending to prove that the appellant procured the deed by
fraud.   Thus limited, the appellant has no occasion for
objection to the reception of the record.

A new trial is advised.

In this opinion the other judges concurred.