CLAYTON E. WHEAT, JR., EXECUTOR (ESTATE OF
ROBERTA S. C. WHEAT) *v.* CLAYTON E. WHEAT,
SR., ET AL. (APPEAL FROM PROBATE)

CLAYTON E. WHEAT, JR., EXECUTOR (ESTATE OF
ROBERTA S. C. WHEAT) *v.* CLAYTON
E. WHEAT, SR.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued May 10—decided June 25, 1968

*Morgan P. Ames* and *Ridgway M. Hall, Jr.,* for the appellant (proponent in the first case and plaintiff in the second).

*Robert A. Fuller,* with whom, on the brief, was *John Keogh, Jr.,* for the appellee (contestant in the first case and defendant in the second).

KING, C. J. The first of the above-entitled cases is an appeal by the proponent from the decree of the Probate Court for the district of Darien denying admission to probate of a purported will of Roberta

Stockton Cox Wheat dated November 1, 1958. From this decision the proponent, who was the executor and virtually the sole beneficiary of the 1958 will, took an appeal to the Superior Court, alleging in his reasons of appeal that the will was duly executed by the testatrix, who was then seventy-four years old and of sound mind.

At the trial in the Superior Court, three interrogatories were submitted to the jury, the first as to due execution, the second as to testamentary capacity, and the third as to undue influence by the proponent, Clayton E. Wheat, Jr., the son and only child of the testatrix, and her husband, Clayton E. Wheat, who is the contestant.

The court instructed the jury that, if they failed to find that the will was duly executed, under the first interrogatory, they need not answer the second and third interrogatories, and their verdict should be for the contestant. The jury answered the first interrogatory in the negative and brought in a verdict against the validity of the will. From a judgment on that verdict, this appeal is taken by the proponent. Since the verdict was necessarily based solely on a lack of due execution, the claims of the parties in this appeal are concerned solely with that issue.

I

We first consider a claim of the proponent that the burden of proof of due execution was on the contestant because in his answer to the proponent's reasons of appeal he not only denied the allegations of due execution and testamentary capacity but also affirmatively pleaded a lack of due execution and of testamentary capacity. This claim is without merit.

Due execution and testamentary capacity are statutory issues (General Statutes §§ 45-160, 45-161), and the burden of proof as to each is upon the proponent. This remains so even though the contestant, as was the case here, affirmatively pleads lack of due execution and lack of testamentary capacity. *Berkeley* v. *Berkeley,* 152 Conn. 398, 401, 207 A.2d 579, and cases cited.

## II

The proponent also claims error in the charge as to the requirements of due execution. To understand this claim some further facts are required. The testatrix died a resident of Darien on November 30, 1961. A will executed in 1956, which divided her estate equally between her husband and their son, was duly admitted to probate, and administration under it was carried on by the son, as executor.

The son claimed to have discovered the 1958 will in the fall of 1964, and he then offered it for probate. On November 9, 1965, the Probate Court denied the admission of the 1958 will to probate on the ground that it was the product of undue influence exerted on the testatrix by her son, the proponent. It is from that decree that the present appeal is taken.

From the proponent's testimony, it appeared that, after conversations with his mother beginning in March, 1958, and extending into the fall of that year, the proponent prepared the 1958 will on a typewriter at his apartment in New York, that the will was worded in accordance with his mother's instructions, that in October of that year he left it with his mother in Darien, and that he saw no more of it until he discovered it in 1964. According to the attestation clause, it had been duly executed on November 1, 1958. The will was fair on its face, and

there was abundant evidence, and no real controversy, that the signatures of the testatrix and attesting witnesses were genuine.

At the trial, the evidence as to due execution came almost entirely from the three attesting witnesses and may be summarized as follows: On November 1, 1958, after luncheon, Miss Annabelle Lewis, of Westport, a friend of long standing of the Wheats, called on Mrs. Wheat at her home in Darien, where she lived with her husband, the contestant. Miss Lewis, during her visit, saw no one at the house but Mrs. Wheat. While they were in the living room, Mrs. Wheat asked Miss Lewis to sign her (Mrs. Wheat's) will and gave Miss Lewis a paper, which was the 1958 will, and Miss Lewis signed it in Mrs. Wheat's presence. Miss Lewis testified that she thought Mrs. Wheat's name was on the paper when Miss Lewis signed as a witness but that she did not remember seeing Mrs. Wheat sign it. On cross-examination, Miss Lewis testified that she could not remember whether Mrs. Wheat's signature was on the paper when she signed it as a witness.

Mrs. Wheat told Miss Lewis that Mr. and Mrs. Herbert Denna would sign the will later. When Miss Lewis signed, neither of the Dennas had signed. The Dennas were part-time employees of the Wheats.

Both of the Dennas testified that they were at the Wheats in the afternoon on November 1, 1958, that they did not see Miss Lewis and that Mrs. Wheat was alone in the living room. While Mr. Denna was working outside raking leaves, Mrs. Wheat asked Mrs. Denna to witness her will and then to ask her husband to come inside to witness it. Mrs. Denna signed the will and then went out and brought in her husband, and he, at the testa-

trix' request, signed the will.[1]  Both of the Dennas saw the testatrix' signature on the will and also saw a signature purporting to be that of Miss Lewis, and each signed in the testatrix' presence and at her request.  Neither saw Mrs. Wheat sign the will.

Since the power to dispose of property by will is a privilege and not a right, one seeking to avail himself of that privilege must conform in all respects to the conditions upon which the privilege is granted. *Harchuck* v. *Campana,* 139 Conn. 549, 554, 95 A.2d 566; *Hatheway* v. *Smith,* 79 Conn. 506, 518, 65 A. 1058.

## (a)

The Connecticut requirements for a valid will are found in §§ 45-160 and 45-161 of the General Statutes.  Section 45-160 permits any person over the age of eighteen years and of sound mind to dispose of his property by will.  Mrs. Wheat was over eighteen, and testamentary capacity is not involved in this appeal.  Thus we need give no further consideration to § 45-160.  Section 45-161 is concerned with due execution and provides in pertinent part that "[n]o will or codicil shall be valid to pass any estate unless it is in writing, subscribed by the testator and attested by three witnesses, each of them subscribing in his presence".  It is this statute with which we are concerned in this appeal.

At the outset, it should be noted that our statute (§ 45-161) is based on the English Statute of Frauds (29 Car. 2, c. 3 § 5) rather than on the English Statute of Victoria (1 Vict., c. 26 § 9). *Canada's*

---

[1] Although Mrs. Denna was given a bequest of $500 in the 1958 will, neither her competency as a witness nor that of her husband was affected, even though the bequest itself was rendered invalid. General Statutes § 45-172.

*Appeal,* 47 Conn. 450, 460; 2 Page, Wills (Bowe-Parker, Rev. 1960) § 19.73, p. 170. Our statute requires that a will, to be duly executed, shall (1) be in writing, (2) be subscribed by the testator, and (3) be attested by three witnesses, each of them subscribing in the testator's presence. Here, the purported will was in writing, and there is no claim that the typewritten matter was not all on it when the testatrix and the attesting witnesses signed it. See *Pope* v. *Rogers,* 93 Conn. 53, 55, 104 A. 241. Indeed, the entire will including the signatures of the attesting witnesses is on a single sheet of paper.

The requirement that it be "subscribed by the testator" means signed at the end by him. Cleaveland, Hewitt & Clark, Probate Law and Practice § 326, p. 405; 2 Page, op. cit. § 19.65, p. 163. The court's charge that due execution required that the will shall have been subscribed by the testatrix prior to the time it was attested by any of the witnesses was correct.[2] *Pope* v. *Rogers,* 92 Conn. 248, 251, 102 A. 583; s.c., 93 Conn. 53, 55, 104 A. 241; Cleaveland, Hewitt & Clark, op. cit. § 330, p. 410; 2 Page, op cit. § 19.116, p. 224, § 19.138, p. 258; note, 91 A.L.R.2d 737, 738. But proof that the testator signed before attestation, or, for that matter, proof of any other element of due execution, may come from sources other than the attesting witnesses. *Pope* v. *Rogers,* 93 Conn. 53, 56, 104 A. 241. The quantum of proof required is the ordinary one of a fair preponderance of the evidence, that is, that, on the whole evidence, it should reasonably appear more probable than

[2] Since there was no evidence that the will was executed as one transaction, the exception to the requirement that the testator sign before any of the attesting witnesses, recognized and explained in *O'Brien* v. *Galagher,* 25 Conn. 229, is necessarily inapplicable. Note, 91 A.L.R.2d 737, 743; 2 Page, Wills (Bowe-Parker, Rev. 1960) § 19.139, p. 259.

otherwise that the instrument was executed in the manner required by the statute. Ibid.

## (b)

The proponent does not question the court's charge that due execution required that the testatrix shall have signed the will prior to attestation by any of the three witnesses.[3]

The proponent's basic claim is that the court also charged that there was a second and additional requirement, since none of the attesting witnesses saw the testatrix subscribe, and that this requirement was that each of the three witnesses did see the testatrix' signature on the will at the time he attested it. The court's charge in this respect was apparently taken from *Pope* v. *Rogers,* 93 Conn. 53, 55, 104 A. 241.

No such requirement can be found in § 45-161, and the court's charge was correct only if the requirement is necessarily implied in the word "attested". It was held in *Canada's Appeal,* 47 Conn. 450, 461, that attestation did not require a knowledge on the part of an attesting witness that the instrument was a will.[4] Although our statute requires that each attesting witness subscribe in the

---

[3] No complaint is made of the charge that, since the testatrix did not subscribe in the presence of the attesting witnesses, she must inform them that the signature was hers and that this requirement was sufficiently met when she asked each attesting witness to sign her will, as all three witnesses testified she did. *Pope* v. *Rogers,* 93 Conn. 53, 56, 104 A. 241; 2 Page, Wills (Bowe-Parker, Rev. 1960) § 19.116, p. 225. This portion of the charge assumes, of course, that the requirement that the testator sign the will prior to attestation has been proven.

[4] It perhaps should be noted that our statute, as it existed at the time of execution of the will in *Canada's Appeal,* 47 Conn. 450, 461, contained an additional requirement that the witnesses sign "in the presence of each other". Cleaveland, Hewitt & Clark, Probate Law and Practice, p. 409; *Lane's Appeal,* 57 Conn. 182, 185, 17 A.

presence of the testator, significantly the statute lacks any requirement that the testator subscribe the will in the presence of any of the attesting witnesses or that they see his signature or even that he acknowledge his signature to them. Clearly, the requirement of attestation in our statute is not inserted solely or even primarily for the purpose of assuring the genuineness of the testator's signature since, if it were, the statute obviously would require the testator to subscribe in the presence of each of the attesting witnesses. 2 Page, Wills (Bowe-Parker, Rev. 1960) § 19.116, p. 225. Indeed, under the express terms of our statute, it is the will which must be attested, not the signature of the testator, as such. *Barber* v. *Henderson,* 304 Mass. 3, 4, 22 N.E.2d 620; note, 127 A.L.R. 384, 385, 386 § II (a), 392 § III (a); 2 Page, op. cit. § 19.116, p. 224; see also *Pope* v. *Rogers,* 93 Conn. 53, 56, 104 A. 241; *Canada's Appeal,* supra, 461.

Attestation is required in order that the attesting witnesses can testify to those things essential under our statutes for admission of the will to probate.[5] *Pope* v. *Rogers,* 92 Conn. 248, 250, 102 A. 583; *Genovese* v. *Genovese,* 338 Mass. 50, 52, 153 N.E.2d 662; 2 Page, op. cit. § 19.74, p. 171; see, also, *Field's*

---

926. This requirement was not in the English Statute of Frauds, nor is it in our present wills statute. *Gaylor's Appeal,* 43 Conn. 82, 85; 2 Page, Wills (Bowe-Parker, Rev. 1960) § 19.128, p. 244.

[5] Of course, a will executed in Connecticut under the supervision of competent counsel would almost invariably be executed as one transaction and would include a proper affidavit made in conformity with the provisions of General Statutes § 45-166, and that affidavit, rather than the attestation clause, would be relied upon. See *Shulman* v. *Shulman,* 150 Conn. 651, 655, 656, 193 A.2d 525; *Vivian's Appeal,* 74 Conn. 257, 259, 50 A. 797. Indeed, the instant case is an excellent example of the trouble, litigation and expense flowing from attempts of a layman to execute, or supervise the execution of, a will without competent, informed, legal assistance.

*Appeal,* 36 Conn. 277, 279. That is, attesting witnesses ideally should be able to give testimony as to the essential elements of the two statutory issues of due execution and testamentary capacity sufficient, if credited by the jury, to prove both issues. *Shulman* v. *Shulman,* 150 Conn. 651, 655, 193 A.2d 525. But since the attesting witnesses are usually laymen, with little or no knowledge of what those essential elements are, they may fail to note or appreciate, at the time of attestation, whether each of the requirements is complied with. If, because of inattention, forgetfulness or even malice, an attesting witness fails to testify as to an essential element for admission of the will to probate, whether under General Statutes § 45-160 or § 45-161, it is not, in and of itself, fatal to the validity of the will. Any other competent, available evidence may be introduced in proof of that essential element. *Pope* v. *Rogers,* 93 Conn. 53, 56, 104 A. 241; *Genovese* v. *Genovese,* supra; 2 Locke & Kohn, Conn. Probate Practice § 282, p. 75.

But if the attesting witnesses are to be able to carry out their function, they must at least have the opportunity of seeing the testator's signature on the will where, as here, they do not see him sign. Otherwise, they could not attest that the signature was affixed prior to any attestation, as is required for a valid execution in Connecticut. Thus, if a will is so held or folded as to conceal the testator's signature from an attesting witness and he is thus deprived of the opportunity to attest that the signature antedated the attestation, the will is not validly attested. *Nunn* v. *Ehlert,* 218 Mass. 471, 475, 106 N.E. 163; *Barber* v. *Henderson,* 304 Mass. 3, 5, 22 N.E.2d 620. The case of *Nunn* v. *Ehlert,* supra, cited in *Pope* v. *Rogers,* 92 Conn. 248, 250, 102 A. 583, and on

which the *Pope* case seems to have been based, is explained and limited in *Barber* v. *Henderson,* supra.

In the instant case, as previously pointed out, the entire will comprised but a single sheet of paper and according to Miss Lewis' testimony, which was uncontradicted, was given her by the testatrix with the request that she sign the testatrix' will. There is no justification for an inference that Miss Lewis did not have a full opportunity to see the testatrix' signature or that it was in any way concealed from her view. Cf. *Pope* v. *Rogers,* 93 Conn. 53, 56, 104 A. 241. Under these circumstances, a proper attestation did not require that Miss Lewis actually see the testatrix' signature prior to attestation if she had an opportunity to see it, that is, if the signature was not concealed from her view, and the court's charge to the contrary was erroneous and clearly prejudicial under the claims of proof in this case. *Barber* v. *Henderson,* supra; 2 Page, Wills (Bowe-Parker, Rev. 1960) § 19.116, p. 226; note, 127 A.L.R. 384 § I, 386 § II (a), 392 § III (a) (1).

Although an essential element (here, that the testatrix had subscribed the will before it was attested) in the admission of a will to probate must be proved, it need not be proved by each available attesting witness. Nor is it true that, if any one of them fails to appreciate or take note of that requirement at the time of attestation or thereafter cannot positively remember whether the requirement was fulfilled, the whole will falls for lack of proper attestation. Yet, that was the effect of the charge as given. In other words, the validity of the will was made to turn, not alone on actual compliance with the statutory requirements, but also on the attesting witnesses' appreciation, observation and recollection of compliance with those requirements.

As was said in *Genovese* v. *Genovese,* 338 Mass. 50, 53, 153 N.E.2d 662, a penalty for an omission to perform a duty on the part of an attesting witness (to be able to testify categorically and affirmatively to every fact necessary for the admission of the will to probate under our two statutes) "should not be visited posthumously upon the testator by nullifying his testamentary act where otherwise valid."

If, and to the extent that, *Canada's Appeal,* 47 Conn. 450, 461, *Pope* v. *Rogers,* 92 Conn. 248, 251, 102 A. 583 (first appeal) or 93 Conn. 53, 56, 104 A. 241 (second appeal), supports the charge of the court as given in the present case, it can no longer be regarded as correctly stating our law.

It may be that on a retrial the proponent will be unable to prove that the testatrix' signature was on the will at the time of Miss Lewis' attestation. But since the charge erroneously imposed the additional requirement that as an attesting witness Miss Lewis must have actually seen the signature of the testatrix on the will prior to attestation, a new trial must be ordered.

## III

Since there must be a new trial, it is unnecessary to discuss the two other claims of error raised in the proponent's brief. For the same reason there is no occasion for consideration of the appeal from the denial of the petition for a new trial in the second case, and as to that case there could be no material error.

There is error in the first case (the appeal from probate), the judgment is set aside and a new trial is ordered.

There is no error in the second case.

In this opinion the other judges concurred.