[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Here the will of Vera G. Albaitis (Mrs. Albaitis), executed February 8, 1990, is contested on grounds of lack of testamentary capacity and undue influence.
The testator was the mother of the plaintiffs, Ronald, Lawrence, and Roger Albaitis as well as of the defendant, William Albaitis.
On February 8, 1990, Mrs. Albaitis executed a will in the office of Attorney James Duplese on video tape. That tape was preserved and made an exhibit before the court.
In that will, Mrs. Albaitis left all her estate to William, save for a one-half interest in land at Webb and Crofut Road in Naugatuck given to Roger and a right under certain conditions to occupy her home also given to Roger. The will specifically and explicitly disinherited her two remaining sons, Ronald and Lawrence. In the will, Mrs. Albaitis listed the reasons for such an action.
Those reasons were the failure of Ronald and Lawrence to give her a 20% interest in the Neuman House restaurant, their failure to repay a loan for the Harlow Court property, Lawrence's failure to repay a loan to purchase his home and to purchase a house trailer, her embarrassment over the bribery trial of the Naugatuck mayor in which she appeared as a witness concerning Lawrence and Ronald's bribery of the mayor and insulting and derogatory remarks those sons made to her.
On May 22, 1987, Mrs. Albaitis had executed an earlier will in which William was disinherited and Lawrence and Ronald were left the bulk of her estate. The 1987 will also contained a provision that Roger receive $10,000 from the sale of her CT Page 5284-E property at Webb and Crofut Road which she left to Lawrence and Ronald and, in addition, a bequest of $5,000 to Roger.
In July, 1987, Lawrence and his wife, Debbie, wrote to Dr. Paolo Mapelli, her physician, asking him to examine Mrs. Albaitis as they were concerned with her behavior. Dr. Mapelli reported after that examination that Mrs. Albaitis was of sound mind.
At age seventy, Mrs Albaitis was admitted to St. Mary's Hospital in 1987 for gastric ulcer surgery and a cholecystectomy. After her discharge from St. Mary's, she entered the Institute of Living at her request on August 14, 1987. Lawrence witnessed her voluntary application which required her to give five days notice if she wished to terminate her hospitalization. On August 21st Mrs. Albaitis sent a sign-out letter to the Institute and persisted in her request to leave despite the concerns of Lawrence and Ronald. On August 28, 1987, she left the Institute for home. After her discharge, Mrs. Albaitis attended several family therapy sessions in Waterbury. During one of them, she stated she wanted Lawrence, Ronald and Roger out of her life. She was then living at her home in Naugatuck, but residing on occasion with William.
In June 1989, Mrs. Albaitis fell at home fracturing her hip and was admitted to Waterbury Hospital. There Dr. Tremaglio, her family doctor, found her to be lucid. When she left the hospital, she lived at home and with William from time to time. In May, 1991, she again fell at home and injured her back. As she could not move around her house and care for herself after two days, she was admitted to Waterbury Hospital. Dr. Tremaglio found her to be alert, pleasant, lucid and able to answer questions appropriately. He further noted she was alert, coherent and oriented to person, place and grossly as to time. When Dr. Tremaglio examined her she knew the date, day of the week, her telephone number and the name of the current president. She was unable, however, to name five large cities and perform other exercises. Dr. Taylor, her orthopedic physician, noted she was then alert and lucid while responding to him in one word answers. Dr. Taylor found she suffered a compression fracture of the back. After a short hospital stay, she again returned home.
In January, 1994, after multiple C.V.A.s, Mrs. Albaitis suffered another fall at home and broke her right clavicle. At CT Page 5284-F her hospital admission, Dr. Tremaglio noted although she was oriented as to place, she was not oriented as to person or time. She was, however, alert and pleasant. Because she could not care for herself at home, she was admitted to an extended care facility after leaving the hospital. There she died in August, 1994 at age 77 of heart failure induced by cancer.
 I.
The plaintiffs argue that the 1990 will contains erroneous statements in the reasons given to disinherit Lawrence and Ronald. These statements, they argue, reflect the delusional state of Mrs. Albaitis' mind.
The defendant has the burden of establishing the testamentary capacity of Mrs. Albaitis. He has met that burden. The video tape reflects a person of sound mind going about the business of disposing of her estate and executing a will. Each of the claimed errors in the reasons given may have a reasonable basis in fact from the evidence. There was a voided stock certificate in Mrs. Albaitis' name drawn up in the Old Neuman Lewis Restaurant stock book. Mrs. Albaitis did lend money to Lawrence and Ronald to buy the Harlow Court property and had, as bookkeeper, to reimburse herself from the construction company accounts. Mrs. Albaitis did lend money to Lawrence by taking out a mortgage on her home so he could purchase his home at 630 Rubber Avenue. The rentals received from the apartments at her home and, up to 1984, at the 630 Rubber Avenue property were from the tenants and were not payments from Lawrence. Mrs. Albaitis did advance Lawrence money to purchase a house trailer, which was not repaid. Mrs. Albaitis did testify at the Naugatuck Mayor's bribery trial and was upset by the attendant publicity.
The court finds from the evidence that Mrs. Albaitis well understood and approved the purpose and effect of the provisions of the February 1990 will. The court finds she had mind and memory sound enough to know and understand the business upon which she was engaged at the time of execution of her will. She understood she was preparing and executing a will, knew perfectly the nature and condition of her property, the persons who were or should be the natural objects of her bounty and her relation to them, the manner in which she wished to distribute her estate among or withhold it from them, and the scope and bearing of the provisions of the will of February 8, 1990. See CT Page 5284-GWheat v. Wheat, 156 Conn. 575, 578.
 II.
The plaintiffs argue that William Albaitis exercised undue influence over Mrs. Albaitis. They admit they bear the burden of proof as William is a son.
The evidence the plaintiffs point to is the presence of William at the time and place of the execution of the will, his coming from disinheritance to be the principal beneficiary, his making the arrangements for the attorney to draw and execute the will and his presence with his mother whenever her visitors came to William's home while she was living there. The inaccurate reasons for disinheriting Lawrence, Ronald and, to a lesser extent, Roger, are also cited.
The court finds the plaintiffs have not met their burden to establish undue influence. Undue influence is that influence affecting and overcoming the testator's free and unrestricted will. It looks to the testator being under the control of someone else. Lee v. Horrigan, 140 Conn. 232, 238. There was no evidence of any such influence.
Mrs. Albaitis' change of relationship with her sons occurred at about a time when she was admitted and then released from the Institute of Living. She was a person concerned about independent living. That William offered her such an opportunity and she responded by changing her will does not constitute undue influence. It rather reflected gratitude. The testator's actions and relations with her family all support such a finding.
CONCLUSION
Accordingly, the court will uphold the action of the Naugatuck Probate Court in admitting the will of Vera G. Albaitis.
McDonald, J. CT Page 5284-H