LOUISE THORNDYKE GOODNO *vs.* MARIE OAKES HOTCHKISS, EXECUTRIX, ET AL.

(LOUISE T. GOODNO'S APPEAL FROM PROBATE).

Third Judicial District, Bridgeport, October Term, 1914.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

A trial judge is under no obligation to make a finding, if the request for one does not contain a statement of the questions of law which it is desired to have reviewed, as required by the statute (§ 793) and rules of court (Practice Book, p. 271, § 17). But if, notwith-

Goodno *v.* Hotchkiss.

standing such omission in the request, he does make a finding, and such finding is incorrect, it may be amended or corrected in the usual and regular way.

A witness called merely to identify checks and receipts for payments made under a written agreement, is not subject to cross-examination respecting the intent of the parties in executing the agreement.

The intention of contracting parties is to be sought in the terms of their written agreement; and their intent if clearly expressed therein is not subject to variation or explanation by oral evidence.

The construction and effect of a written instrument is a matter for the court and not for the jury.

The widow and children of a decedent who left an unsigned will, mutually agreed in writing to divide his estate, when ready for distribution, among themselves in the proportions indicated by him; and thereafter effected a division accordingly. Later the widow died leaving a will, from the probate of which an only child of a deceased son appealed, attacking the testamentary capacity of the testatrix and alleging undue influence. *Held* that the validity of the widow's title to the property she acquired from her husband's estate under the mutual agreement was not in issue in the case, and that the jury were properly instructed that such property was to be presumed by them to be the property which the testatrix intended to dispose of by her will.

The way in which a testatrix acquired the property bequeathed by her will, is admissible in evidence as a circumstance for the jury to consider as bearing upon the natural or unusual character of her testamentary dispositions.

A request to charge respecting a situation of which there was no evidence may very properly be refused for that reason.

The relation of parent and child is naturally one of confidence and trust, and therefore does not, of itself, warrant an inference or presumption that a testamentary gift from the parent to the child was obtained by means of undue influence exerted by the legatee. Accordingly, a contestant of the will who alleges undue influence under such circumstances is bound to prove the truth of his allegations.

It is not enough to show that a child had the opportunity to influence her parent: it must also appear that the opportunity had been abused.

Respecting a bequest to Yale University, the trial judge said in his charge that so far as he recalled there was no evidence that such bequest had been procured by undue influence—but that the jury would correct him if he were wrong. *Held* that, so far as the finding showed, the trial judge was correct in his recollection of the evidence, and if otherwise, that the appellant could not have been harmed by this portion of the charge.

The clerk of the Court of Probate having produced and identified all

the records connected with the estate of the husband of the testatrix, was asked if there was no record as to what had been done with the so-called mutual distribution—whether it was received as a mutual distribution or not. *Held* that this inquiry was properly excluded: that the record itself was the best evidence of its contents, and the record was already in evidence; and that if the inquiry called for the witness' views of the purpose for which the mutual agreement was received, his views were inadmissible.

Statements of the testatrix bearing upon her alleged incapacity, said to have been made to the husband of the witness and by him repeated to her, were offered in evidence by the appellant. *Held* that they were properly excluded as mere hearsay; and that the circumstances attending the alleged statements were not such as to guarantee their trustworthiness, and therefore to justify their admission as an exception to the hearsay rule.

Inquiries relating to matters immaterial to the issues on trial should be excluded.

Argued October 29th—decided December 2d, 1914.

APPEAL from an order and decree of the Court of Probate for the district of Madison proving, approving and admitting to probate a certain written instrument as the last will of Mary A. F. Hotchkiss of Madison, deceased, taken by the plaintiff to the Superior Court in New Haven County and tried to the jury before *Bennett, J.;* verdict and judgment for the defendants, sustaining the will, and appeal by the plaintiff. *No error.*

*Prentice W. Chase* and *A. Heaton Robertson,* for the appellant (plaintiff).

*George D. Watrous,* with whom was *Thomas M. Steele,* for the appellee (Marie Oakes Hotchkiss, executrix, defendant).

*Henry Stoddard,* with whom was *John W. Bristol,* for the appellee (Yale University, defendant).

THAYER, J. All the evidence in this case has been made a part of the record on appeal, pursuant to General

Statutes, § 797, and we are asked to correct the finding which was filed by the trial judge. The appellees ob-. ject to any corrections being made, both because the record properly presents the facts and rulings necessary to a proper consideration of the questions raised by the appeal, and because the request for the finding did not contain a statement of the questions of law desired to be reviewed, as required by General Statutes, § 793, and by the rules of this court, § 17, Practice Book, 1908, p. 271. The requirements of the statute and rule referred to were entirely ignored in the appellant's request for a finding. In *Clark's Application*, 79 Conn. 136, 64 Atl. 12, we spoke of the beneficial purpose sought to be accomplished by the statute and the disadvantages resulting from noncompliance with its requirements, saying that the statute "ought to be enforced not only in its letter but in its spirit;" and that it is the plain duty of courts to give their support to the attempt which has been made by the statute to prevent the results enumerated. The trial judge, notwithstanding, has filed a finding, which is before us, and if it is not correct it should be corrected, if the case is to be considered by us. We have examined the entire record, and it appears to us that the finding of the trial judge properly presents the facts and rulings; therefore none of the suggested corrections in the finding have been made.

The appellant is the only child of Nathaniel S. Hotchkiss, the eldest son of the testatrix, who predeceased her. The appellee Marie O. Hotchkiss is the daughter of the testatrix. These two are the sole heirs at law of the testatrix, another son, William H. Hotchkiss, having died childless after the death of his brother and before the death of the testatrix.

The appellant, upon the trial in the Superior Court, claimed that the testatrix was not of sound mind and

was incapable of making a will, and that she was induced to make the will and codicils in question by the undue influence of her daughter Marie O. Hotchkiss and certain professors and officers of Yale University. In support of these claims, and as showing that the disposition of the property made by the will was not such as the testatrix, if sane and not unduly·influenced, would naturally have made, the appellant offered evidence to prove the source from which and the circumstances under which the testatrix acquired the bulk of her property. This evidence tended to show the following facts: The husband of the testatrix, Henry O. Hotchkiss, died December 4th, 1883, leaving two sons and one daughter—children of the testatrix—as his only heirs at law, and an estate which was inventoried at more than $265,000. A paper in the form of a will, but unsigned and unexecuted, was found among his papers, wherein a legacy of $10,000 was given to each of the two sons, a legacy of $15,000 to the daughter, and the rest of the estate was given to the widow. On January 9th, 1884, administration on his estate was granted to the widow by the Court of Probate, and on the same day she and the three children, the youngest of whom was then about thirty-three years of age, entered into a written agreement that when the estate was ready for distribution they would divide the same between themselves in the manner and in the proportion indicated in the instrument purporting to be the unsigned will of Mr. Hotchkiss, which was annexed to and made part of the agreement. This agreement, omitting the unsigned will, reads as follows:—

"Whereas Henry O. Hotchkiss late of New Haven, Connecticut, deceased, left an instrument purporting to be his last will and testament, but said instrument was not signed and executed by him as a will:

"And whereas We Mary A. F. Hotchkiss, the widow,

and Nathaniel S. Hotchkiss, William H. Hotchkiss and Marie O. Hotchkiss, the three and only children of said Henry O. Hotchkiss deceased—being the only persons interested in said estate of Henry O. Hotchkiss, and believing that said unexecuted will discloses the real intention of said deceased as to the disposition of his property, and we being desirous of carrying that intention into full effect.

"Therefore we have entered into the following mutual agreement.

"We do each hereby mutually agree in consideration of the promises and agreements of the other parties to this instrument, that when the estate of said Henry O. Hotchkiss is ready for distribution that we will divide the same between ourselves in the manner and in the proportion indicated in said instrument purporting to be the unexecuted will of said deceased, which instrument is hereto annexed and made part of this agreement.

"And we the said Nathaniel S. Hotchkiss, William H. Hotchkiss and Marie O. Hotchkiss the children of said deceased, for the consideration aforesaid, do hereby bargain sell and convey to our mother said Mary A. F. Hotchkiss, her heirs and assigns, all our interest in the estate of Henry O. Hotchkiss deceased, both real and personal estate, except said sum of thirty-five thousand dollars mentioned in said instrument purporting to be a will which sum of thirty-five thousand dollars we reserve to ourselves, in the sums and proportions named in said instrument.

"And I the said Mary A. F. Hotchkiss in consideration of the agreements and conveyances of my said three children above named, to me, do hereby agree to transfer to my said three children from said estate the sum of thirty-five thousand dollars, as follows, viz. To said Nathaniel S. Hotchkiss ten thousand dollars, to said William H. Hotchkiss ten thousand dollars

and to said Marie O. Hotchkiss fifteen thousand dollars such transfer of said sums to my said children from said estate to be made as soon as said estate is ready for distribution.

"And we the said parties to this instrument do hereby mutually agree each with the other, for the consideration aforesaid, that we will execute, each to the other, such other instruments of conveyance as may be deemed necessary either in law or equity to carry this agreement into full effect, and we do hereby bind ourselves, our respective heirs executors and administrators to the full and complete performance of this agreement."

The probate record, which was laid in evidence by the appellant, shows that the final account of Mrs. Hotchkiss as administratrix was filed on July 30th, 1884; that there remained in her hands for distribution $57,000 in real, and $213,712.77 in personal, estate; that the account was accepted, and an order was entered which reads: "Ordered, That said real and personal estate be distributed among the widow and heirs of the deceased according to law. This court appoints                Esquires, disinterested persons, who, first being duly sworn, shall distribute the same according to law, and return make to this court." The mutual agreement between the widow and children is recorded as a part of the record pertaining to Mr. Hotchkiss' estate. The appellant claimed, and offered evidence to prove, that on April 3d, 1884, Mrs. Hotchkiss advanced to the eldest son, Nathaniel, the sum of $10,000, being the amount reserved to him under the mutual agreement, and that some time in January, 1885, Mrs. Hotchkiss, as administratrix, paid to the other son, William, and to the daughter, Marie, the sums reserved to them, respectively, by the agreement, and that subsequently she transferred to herself the balance of the personal estate, without other authority from her

children to do so than the mutual agreement of January, 1884. In July, 1884, the children united in a quitclaim deed to their mother of their interests in the real estate left by their father, and, fifteen years later, when she was about to sell a portion of the real estate, they united in a warranty deed to her of all the real estate left by their father subject to her dower rights therein.

The appellant's third request to charge was, in substance, that if the jury should find that in some manner the shares of the children in the real and personal estate left by their father was placed by them in their mother's hands for her own use, that fact should be considered by them as bearing upon the natural or unnatural disposition which the testatrix had made of her property.

The fourth request was, in substance, that if the jury should find that the shares of the children in their father's estate were not placed in their mother's hands for her own use, but that she believed at the time of making her will that the property of which she was making disposition included all of the estate of Henry O. Hotchkiss in her possession, with its accumulations, these facts were to be considered by them in determining whether she had capacity at that time to know and comprehend the nature and condition of the property of which she was attempting to make disposition by will.

The fifth request was that there is a presumption of law that a testator wishes his children to participate in his estate, and if the jury should find that the property of which the testatrix died possessed, and which she intended to dispose of by her will, came to her from her children, such fact would emphasize the presumption, particularly if the jury should find that no consideration was given them by their mother for the relinquishment of their rights to such property under the statute.

These requests all assume that it was for the jury to determine what was the effect of the mutual agreement and proceedings in the Court of Probate as disclosed by the record in the matter of Henry O. Hotchkiss' estate. Upon the same assumption, when the appellee Marie O. Hotchkiss was called to identify the checks and receipts given for the payments to herself and her brother William, of the amounts reserved to them in the mutual agreement, she was asked by the appellant's counsel on cross-examination as to the intentions of the parties to the mutual agreement when they signed it. The court's exclusion of this testimony, its refusal to charge the requests above mentioned, and its charge as given relative to the same subject-matter, are assigned for error, and these assignments may properly be considered together.

The evidence referred to was properly excluded. It was not germane to the examination in chief, and so was not proper cross-examination. Furthermore, the intention of the parties was to be sought in the agreement itself, and could not be proved by parol testimony. This is the general rule. There is no ambiguity in the instrument in question, but the intention of the parties is therein expressed with unusual clearness.

The third request was properly refused. So far as the finding shows, when the heirs at law placed their shares in their mother's hands they did so pursuant to the mutual agreement. The construction of that agreement, if in issue, is for the court and not for the jury. Had the request been complied with, the jury could only have understood that the construction of the agreement was a question for them.

For similar reasons the fourth request was properly refused. If it means that if the testatrix believed that her property consisted of that which she received from her husband's estate through the probate proceedings,

including the mutual agreement for a division thereof, and the jury should find that it was so held by her, this should be considered by them in determining her capacity to make a will, the request was covered by the charge as given. But it is stated in the appellant's brief that this request was predicated upon the appellant's construction of the mutual agreement, namely, that it was intended by the parties to give the testatrix a life use only in the children's shares of their father's estate, and that at her death it should come back to them. The confessed purpose of the request was to have the jury told that if the testatrix did not place the same construction upon the mutual agreement and probate proceedings which the jury did, they could consider that as bearing upon her capacity to comprehend the nature and condition of her property. The request, as construed by the appellant's counsel, was objectionable for the same reasons stated with respect to the third request, and for others also.

The finding does not show that there was any evidence to support such a situation as is suggested in the fifth request, and it was for that reason properly refused.

The appellant's objection to the charge upon this branch of the case is that it did not fully present her claims to the jury, that it instructed the jury that the testatrix acquired title to the property received from her husband's estate through the family agreement, and that they need not consider the claim of the appellant that the property of the testatrix mentioned in the inventory was subject to some claim by the husband's estate, because that estate had never been legally distributed.

There was no necessity for a statement to the jury of all of the subordinate claims of the appellant. The main question settled the others. The court, while neglecting to construe the family or mutual agreement,

told the jury that they should consider the estate inventoried as belonging to the testatrix, as the property which she was presumed to intend to dispose of by her will; that the question whether the husband's estate had any claim against it was not an issue before them; but that they were to consider the circumstances under which she received it, and that it was in evidence before them that a portion of it came to her from her children and from her husband's estate, and that these were proper matters to be considered by them as bearing upon the natural or unnatural character of the dispositions which she made. The court did not pass upon the legality of the testatrix's title. That was not in issue. The question was as to the validity of her will, and this the jury were told. The effect of the charge was, that as to this case the jury were to consider that the estate which she had possessed and used and treated as her own for more than thirty years after it had been transferred to her by her children and the administratrix of her husband's estate, was to be presumed by them to be the property which she intended to dispose of by the will. The fact that she had received it in part from her children was, as the jury were told, a proper subject to be considered by them. The circumstances might be such that it would, in such case, be unnatural not to restore the property at her death. It might be that circumstances were such that it would be unnatural to remember them at all in the will. But attacking her title to the property held by her for thirty years, as the appellant's own testimony showed, was not a proper way to attack her testamentary capacity. Whether the husband's estate was properly distributed was not a question before the court, and the instruction, that the jury were not to consider the appellant's claim that his estate had a claim upon the property of the testatrix, was correct.

The other assignments of error as to this branch of the case have not been pursued in the brief, and we find no error in the charge relating thereto.

The eleventh, twelfth, thirteenth and fourteenth requests to charge were properly refused. The eleventh request called for an instruction that when it appears that a natural object of the testator's bounty has been excluded from participation under the will, or when a stranger to the testator has been remembered to the exclusion of the natural object, or when one of the beneficiaries under the will has occupied, during the lifetime of the testator, a position of trust and confidence toward him, then the contestant has satisfied the burden of proof of undue influence imposed upon him in the first instance.

The rule is that the contestant of a will upon the ground of undue influence has the burden of proving the undue influence. But the burden is shifted when it appears that a stranger, holding toward the testator a relation of confidence and trust, is a principal beneficiary under the will, and natural objects of the testator's bounty are excluded. This shifting of the burden of proof in such a case is an exception to the general rule that the contestant has the burden of proving the undue influence alleged. We have said that this exception is not to be extended beyond the limits placed upon it by its recognition, and that the fact that it appears that a confidential relationship existed between the beneficiary and the testator does not shift the burden of proof when the beneficiary is a child of the testator. *Lockwood* v. *Lockwood*, 80 Conn. 513, 522, 69 Atl. 8; *Dale's Appeal*, 57 Conn. 127, 144, 17 Atl. 757; *Hills* v. *Hart*, 88 Conn. 394, 396, 91 Atl. 257. Under the eleventh request, and the other three enumerated, the burden of disproving the appellant's allegation of undue influence would have been shifted upon the appellee,

who was a daughter of the testatrix and during her life lived with her in relations of confidence and trust. These requests did not correctly state the law, and were properly refused.

The court properly charged the jury, in that portion of the charge referred to in the thirty-sixth assignment of error, that the companionship and relations of confidence and trust existing between the testatrix and the appellee showed opportunity for undue influence, but that the appellant must go further and show that the opportunity had been abused. This placed the burden of proving the undue influence alleged upon the appellant, where it belonged, and left it to the jury to determine from the facts and inferences whether undue influence by Miss Hotchkiss produced the will.

The fifteenth, sixteenth, seventeenth, eighteenth, nineteenth and twentieth requests are based upon the same misconception of the law which was the foundation of the eleventh request, namely, that if it is shown that a beneficiary under a will is a stranger to the testator, the burden is shifted to him to prove that the bequest was not obtained by fraud or undue influence. The facts referred to in these requests, as placing upon the appellees the burden of showing that the will was not the product of undue influence, were merely facts from which the jury might be asked to find, as inferences of fact, that the will was the product of an unsound mind or of undue influence.

The thirty-eighth assignment of error excepts to a portion of the charge relating to the claim made in the reasons of appeal and, we assume, in the argument, that certain professors of Yale University had procured the will by undue influence. The finding does not show that any testimony was offered to prove undue influence by the University or any of its professors. The judge, in the charge, said to the jury that so far as he recalled,

and that they would correct him if wrong, there had been no evidence introduced of any inducement by any member or any person on behalf of the University. But the jury were then told that such influence might be used by one not benefited by the will or bequest, and that if the appellee Marie O. Hotchkiss had unduly influenced the testatrix to make the bequest to Yale University, that would avoid the will.

The court, so far as the finding shows, was correct in its recollection of the evidence, and, if not, the jury were left to their own recollection of it. The appellant was not harmed by this portion of the charge.

Several errors are assigned in the admission of testimony. Many of the rulings complained of have not been pursued in the oral argument, and are too clearly correct to require notice. One or two which were pressed in argument may be noticed. An assistant clerk of the Court of Probate, John V. O'Brien, called by the appellant, had produced and identified all the records of the Court of Probate connected with the estate of Henry O. Hotchkiss, and they were laid in evidence. He was then asked if there were no records in the Court of Probate as to what was done with the mutual distribution, so-called, by the Court of Probate—whether it was received as a mutual distribution or not. It is now claimed that the exclusion of this evidence was the exclusion of a part of the record. If it was a part of the record, the record was the best evidence of it, and that was already in evidence. If it called for the witness' views of the purpose for which the paper was received, it was inadmissible. The evidence was properly excluded.

The appellant claimed that the testatrix was unreasonably and insanely opposed to the institution of marriage. She offered the divorced wife of William H. Hotchkiss, now dead, to testify to alleged statements

of the testatrix, reported to the witness by her husband, to show that the testatrix was opposed to their marriage and encouraged a separation and divorce; and also to statements reported to have been made to him by the testatrix, contradictory of statements previously made by her, as tending to show mental incapacity.

This was properly excluded as mere hearsay. The appellant claims that she could not otherwise prove these facts sought to be proved, and so there was a necessity for resorting to hearsay testimony; that the circumstances were such as to guarantee the general trustworthiness of the evidence, and that it thus combined the two principles which Wigmore (Vol. 2, § 1420) says underlie the exceptions to the hearsay rule.

The necessity may be admitted, but the situation fails to furnish the circumstantial guaranty of trustworthiness. The statements of the husband sought to be proved were made many years ago, some of them nearly thirty. They were made by one who, as the appellant claimed to have proved, deceived the testatrix in contracting in Europe a secret marriage with a woman to whom she was opposed, and in living with his wife for two years in New Haven before knowledge of the fact came to the testatrix from others. He later separated from his wife and went west, and sought a divorce from her there. Statements by such a witness, made to his wife at a time when he was living separate from her, that the separation was caused by his mother, if not as likely to be false as to be true, were given under such circumstances as to call for a cross-examination of the witness.

The question asked Mrs. Elizabeth Hotchkiss as to the conversation which she had with her future husband concerning his trip to Europe and the arrangements made for her to follow him, and why he was doing it, was properly excluded as immaterial to the issues before

the jury. For the same reason the statement made by Mrs. Goodno's father, Nathaniel Hotchkiss, when he was reading a letter of the testatrix relating to Mrs. Goodno's coming marriage, was properly excluded.

No appeal from the refusal to set aside the verdict as against the evidence was taken within the time fixed by statute, and the question of the correctness of that ruling is not properly before us. Error has been assigned upon that ruling, but has not been pursued in the brief or arguments of the appellant's counsel.

There is no error.

In this opinion the other judges concurred.