## THE MAX AMS MACHINE COMPANY *vs.* INTERNATIONAL ASSOCIATION OF MACHINISTS, BRIDGEPORT LODGE No. 30.

Third Judicial District, Bridgeport, October Term, 1917.

PRENTICE, C. J., RORABACK, WHEELER, BEACH and SHUMWAY, Js.

A recovery for expenditures made by a manufacturer whose workmen were out on strike, for special officers, watchmen and guards for the protection of the plant and its equipment, because of the alleged illegal acts and conduct of the strikers, should be limited to those incurred prior to the commencement of the action.

It is to be assumed that strikers will conform to the terms of an injunction order forbidding the commission of specified illegal acts by them, and therefore their former employer cannot recover for expenses incurred by him for protecting the plant, in the absence of competent evidence that the defendants have in fact continued to commit, or threatened to commit, such illegal acts after the issuance of such order.

While mere hearsay evidence or rumor that the strikers are to continue their illegal acts, may be sufficient to justify the employer, acting in his own interest and from his own standpoint, in continuing his expenditures for special officers and guards, it does not furnish a basis for charging such expenditures to the strikers; to accomplish that result, the plaintiff must prove that the striking defendants, or some of them, by their acts, conduct, speech or otherwise, furnished reasonable ground for the belief that past wrongdoing was to be continued notwithstanding the injunction.

Acts, words, or conduct, to constitute agencies of coercion, as the law employs that term, must not only be calculated to induce one to act against his free will and judgment, but must also be intended to so operate.

A plaintiff is entitled to nominal damages at least, if a previous determination of the equitable issues in the case has necessarily adjudicated in his favor all the facts upon which his claim for damages rests.

Orders for goods signed by a rubber stamp may be shown to be authentic or genuine by other evidence than their signatures, and prima facie proof of their authenticity is all that is required to render the orders admissible in evidence.

Argued October 26th—decided December 15th, 1917.

SUIT to restrain the defendants from interfering with the business of the plaintiff by patrolling, picketing or loitering upon. or near the streets or paths leading to its manufacturing plant, for the purpose of preventing by threats, intimidation or otherwise, persons from entering into its employment or from continuing therein, and for damages, brought to the Superior Court in Fairfield County where a temporary injunction was granted (*Gager, J.*) and later, by agreement, a permanent injunction, and the claim for damages was afterward tried to the jury before *Bennett, J.;* verdict and judgment for the plaintiff for $5,000 damages, and appeal by the defendants for alleged errors in the rulings and charge of the court. *Error and new trial ordered.*

The plaintiff is a manufacturing corporation operating its plant in Fairfield, just outside of the limits of Bridgeport. The defendants are a labor union and three individuals, one being the business agent of the union and the other two its members. The complaint alleges that the defendants conspired to do, and in the prosecution of the conspiracy did, various unlawful and harmful acts to the plaintiff and concerning the conduct of its business, in order that it might be compelled, against its will and in compliance with their demands, to discharge one of its employees and reinstate another who had previously been employed by it. The unlawful and harmful acts complained of were incidental to, and the attendants of, a strike which the defendant union had declared, and were participated in by its members, including the individual defendants. Among the persons so participating were all of the plaintiff's employees who were members of the union. Their acts included, as alleged, the picketing of the plaintiff's plant and its approaches, threatening, following, and systematically annoying with

opprobrious epithets and insulting remarks and in other ways, even to the extent of using personal violence, seeking to intimidate its employees who refused to go out, members of their families, and persons seeking employment. These acts, it is alleged, were done for the purpose of preventing the plaintiff from procuring and retaining workmen, interfering with the efficient conduct of its business, and, through the harm and damage thus caused, coercing it to accede to the demands made upon it. These acts, it was alleged, resulted in great damage to the plaintiff in the loss of business and business profits, the cost of advertising for workmen to enable it to operate its plant efficiently, and the expense incurred in the hiring of special officers, watchmen and guards for the protection of its property and employees. Both equitable and legal relief were asked for; the first by way of both a temporary and permanent injunction restraining the unlawful acts, and the second by an award of damages.

An order to show cause why a temporary injunction should not issue, having been made after the return of the case, a hearing was had thereon. The court found that the acts complained of, save only those involving actual personal violence, had been and were being committed by the defendants as, and for the purpose, charged in the complaint, and issued a temporary injunction forbidding the further picketing of the plaintiff's premises and the further doing of the several acts complained of. Later, counsel filed a stipulation that a permanent injunction might issue, in form to be determined by the court after argument. Following such argument, the temporary injunction was made permanent. The case was then claimed for trial upon the claim for legal relief. This was had to the jury. The questions here presented all grow out of that trial.

*Hugh J. Lavery*, with whom was *Lawrence S. Finkelstone*, for the appellants (defendants).

*Ralph O. Wells*, for the appellee (plaintiff).

PRENTICE, C. J. The plaintiff, under the instructions of the court, was permitted to recover for the expenditures incurred by it in the employment of special officers, watchmen and guards, from the time the picketing began down to a time about four months after the action was commenced, and two months after the temporary injunction was issued, when that employment ceased. It is apparent that this was irregular, in so far as the period subsequent to the beginning of the action was concerned. But the course pursued was taken without objection on the part of defendants' counsel, whether in the course of the admission of testimony or otherwise, that there could be no recovery in the action for expenditures so incurred after its commencement, and it is not complained of either in the reasons of appeal or in the brief or argument before us.

The first reason of appeal, indeed, does assert that the court erred in admitting evidence of payments made for the services of the officers and guards subsequent to the issuance of the temporary injunction. This claim, however, as clearly appears in the brief and argument of counsel, is not one based upon the fact that the right of action for them had not accrued when the action was begun, but upon the broader and more fundamental proposition that there could be no recovery in any event for expense incurred for protective purposes after the restraining order was issued, in the absence of proof that the plaintiff was justified in charging the same to the defendants by reason of acts or conduct on their part in violation or threatened

violation of the injunction, or of acts or conduct of theirs indicative of a purpose entertained by them not to observe it and not to desist from conduct in disregard of the plaintiff's rights.

Upon the subject of this expense the court's instructions were quite correct, in so far as it charged that to justify the plaintiff's recovery of them it must appear that they were caused by the action of the defendants. But that statement was immediately followed by language which must have left the jury in the belief that recovery could be had by the plaintiff if its officers and agents, as ordinarily prudent men, were reasonably justified in the continuance of the employment of the officers and guards by reason of the conditions which had been created by the strike and the defendants' conduct in conducting it, quite apart from their attitude and conduct following the issuance of the injunction. The question the jury was called upon to decide was not one as to the reasonableness of the action of the plaintiff's officers in employing guards from the standpoint of the company's interests. Such action might well have been eminently wise and prudent as a precautionary measure taken in the company's interest, and yet not one whose cost could properly be chargeable to these defendants. The plaintiff was bound to show not only that the course pursued was reasonably justified as a matter of prudent management of its property and affairs, but that it was one that was rendered reasonably necessary by the conduct of the defendants following the issuance of the injunction, or their attitude and disposition in respect to compliance with its terms.

The plaintiff had no right to assume that there was to be noncompliance, and, without any sort of proof of a purpose or disposition on the defendants' part to disregard the order, to incur expenditures for precaution-

ary measures to meet such contingency to be charged to them. Suspicion or fear that the wrongful acts would continue, notwithstanding the injunction, whether that suspicion or fear grew out of past conditions or idle rumors as to the defendants' plans and purposes for the future, might well justify precautionary measures. But neither suspicion nor fear would furnish a basis for charging the cost of those measures to the defendants. Such a basis could only be supplied by proof of some action, conduct, words or attitude of the defendants, or some of them, furnishing reasonable grounds for a belief, suspicion or fear, that past wrongdoing was to be continued notwithstanding the injunction. Precautions taken under other circumstances, although dictated by prudence from the standpoint of the plaintiff, would be for it to pay for like any other expenditure in its interest. They would not be chargeable to the defendants if there was no other reason for them than that furnished by past conditions. The defendants were in duty bound to obey the restraining order and desist from further wrongful acts, and it was to be assumed that they would do so. Unless and until some indication was furnished by them that their intentions were otherwise, the plaintiff would have no right to incur expense to be charged to their account to meet such contingency.

This the charge permitted. That it did so, clearly appears from a passage in it immediately following and connected with the instructions just referred to. In this passage the jury's attention was called to the evidence offered and admitted of "rumors" concerning the defendants' intentions which had come to the plaintiff's knowledge, as disclosing the conditions under which it acted. The only evidence which could have been thus referred to, or which, in so far as appears, could have been pointed out in the testimony

as disclosing information had by the plaintiff, was that more fully stated in the finding as "rumors, reports, newspaper statements and other items indicating and suggesting an intention on the part of the defendants and their co-conspirators to injure the property of the plaintiff and to continue to harass and annoy its employees." Included in this evidence were confidential reports coming from the Manufacturers' Association of the county, purporting to contain information obtained by or through some person or persons present at the meetings of the defendant union held subsequent to the issuance of the injunction.

All the evidence thus referred to by the court as showing the plaintiff's information prompting it to take the action which it did, was pure hearsay, and inadmissible for any other purpose than as tending to establish reasons for the plaintiff's action in safeguarding its property and interest as a prudent precaution from the standpoint of the corporation. It was inadmissible as proof of the truth of the matters embodied in the rumors, reports and statement, and therefore inadmissible against the defendants to show that they were contemplating or intending to act as stated therein, to wit, in disregard of the restraining order. It might furnish ample justification for the plaintiff's officers to use precautions in the corporate interest: it could not bind the defendants so as to make them chargeable with the expense of the precautions taken. Justification for such a course could only arise out of their acts, conduct, words or attitude established by competent proof.

There appears to have been no evidence of any sort to show, or tending to show, that these defendants did not strictly conform their conduct to the terms of the injunction, or that they planned or purposed otherwise, or that they indicated by word or act that they

harbored such plan or purpose, save only as these hearsay rumors and reports might have been held to so indicate. Under the instructions of the court, therefore, the jury might well have accepted these rumors and reports as sources of the plaintiff's information, justifying not only the adoption of precautionary measures reasonably called for by the defendants' conduct, but also the charging of them to the defendants.

Concrete illustrations are afforded by the admission against the defendants' objections of the reports coming from the Manufacturers' Association already noticed, and which is made the subject of the second reason of appeal. These reports were admitted, not as affording proof that the facts detailed in them were true, but as disclosing information in the light of which the plaintiff acted in continuing the employment of special officers and guards. The reasonableness of the plaintiff's conduct in so doing, however, was not, as we have seen, the determining issue in the case which sought to impose upon the defendants the burden of the expense thus incurred. That determining issue was one as to whether or not the defendants, by their acts, conduct, speech or otherwise, furnished justification for the course pursued. The court's charge not only failed to observe this distinction, but even prepared the way for the jury to bring in a verdict which should include the expense incurred subsequent to the issuance of the injunction, in the taking of precautionary measures upon the strength of hearsay testimony alone.

The court, while enumerating the various means by which coercion might be practised, told the jury that any act, suggestion or annoyance which tends to operate upon one's fears or will, as distinguished from his reason, constitutes coercion. This passage, contained in one of the plaintiff's requests to charge and given to the

jury in its entirety, was erroneous, in that it altogether ignored the important element of intent.   Acts, words or conduct to constitute agencies of coercion, as the law employs that term, must not only be calculated to induce one to act against his free will and judgment, but also must be intended to so operate.   *State* v. *Stockford*, 77 Conn. 227, 238, 58 Atl. 769.

The defendants' complaint, that the court erred in its instruction that in view of the adjudications made when the equitable issues were determined, the plaintiff was entitled to a verdict for nominal damages in any event, is not well made.   *Cox* v. *McClure*, 73 Conn. 486, 491, 47 Atl. 757.

The plaintiff, for the purpose of showing business losses, offered in evidence certain orders bearing a rubber stamp signature, testified to as received and rejected by reason of the conditions created by the conduct of the strike.   Their admission, although accompanied by other proof tending to establish their authenticity, was objected to on the ground that they were not properly authenticated.   The plaintiff was not confined to the signatures for the establishment of their authenticity.   Prima facie proof of genuineness was all that was required to render the orders admissible, and that was supplied by proof outside the signatures. *Deep River National Bank's Appeal*, 73 Conn. 341, 346, 47 Atl. 675.

There is error and a new trial is ordered.

In this opinion the other judges concurred.