MAURICE W. SHULMAN ET AL. *v.* BEATRICE SHULMAN
ET AL., EXECUTORS (ESTATE OF MAX SHULMAN)

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued May 7—decided July 2, 1963

*Harry L. Nair,* with whom, on the brief, was *Jonathan S. Cohen,* for the appellants (plaintiffs).

*Wallace W. Brown,* with whom was *Robert E. Pritchard,* for the appellees (defendants).

KING, J. In September, 1959, Max Shulman, a resident of Hartford, died at the age of 89. He left a wife, Bella, and seven children, the issue of the marriage, who in the order of their respective ages are Maurice, Beatrice, Joseph, Sophie (Shulman) Walsh, Esther (Shulman) Wilkes, Lisbeth (Shulman) Levine and Albert. By a will of some length and complexity, dated March 19, 1958, and subsequently admitted to probate, the testator devised to his unmarried daughter Beatrice, who had resided in the parental home for many years, certain real estate, some of it subject to a life estate in her mother, and made bequests of $500 each to Esther, Maurice, Sophie and Joseph. The residue was given to Beatrice, Lisbeth and Albert, in trust, to pay over to Bella, for life, the income and so much of the principal, from time to time, as the trustees should deem necessary. At her death, the trust was to terminate, and seven parts of the corpus were given to Beatrice, five parts to Lisbeth and eight parts to Albert. Beatrice, Lisbeth and Albert were named executors and are the proponents in this appeal from the admission of the will to probate. The contestants are the other four children. The will was drawn by Attorney George Cutler, who had prepared three previous wills for the testator, one in 1946, one in 1950 and one in 1956.

The 1956 will made a disposition of the property more favorable to the contestants than did the 1958 will attacked in this appeal. In 1952, the testator, who had established several family corporations which owned certain motion picture enterprises,

turned over the stock in the corporations, in various amounts, to his children, other than Esther. At no time did Esther have any interest in the corporations. After the 1952 transactions, the testator owned no interest in the corporations nor in certain family partnerships which were also owned by his children. Albert and Maurice held executive positions in the corporations, and they, as well as Beatrice and Joseph, held directorates in them.

While the reasons of appeal filed pursuant to § 88 of the Practice Book in effect raised three issues—lack of due execution, lack of testamentary capacity and undue influence on the part of the proponents—actually there was no substantial support for the claim of lack of due execution, and the real controversy at the trial concerned the claims of lack of testamentary capacity and undue influence. See cases such as *Livingston's Appeal,* 63 Conn. 68, 75, 26 A. 470; *Boschen* v. *Second National Bank of New Haven,* 130 Conn. 501, 504, 35 A.2d 849. The jury found the issues for the proponents, and in answers to interrogatories they found that the will was duly executed, that the testator had the requisite testamentary capacity and that he was not unduly influenced by the proponents or any of them.

We consider such of the errors assigned by the contestants as have been pursued in their brief. We do not, of course, consider certain claims in the brief which were not raised at the trial. The claims of error addressed to the charge and those attacking rulings on evidence must be determined on the finding. Practice Book §§ 400, 405; *Pischitto* v. *Waldron,* 147 Conn. 171, 176, 158 A.2d 168; *Facey* v. *Merkle,* 146 Conn. 129, 131, 148 A.2d 261.

The proponents called one of the three attesting

witnesses to the will and examined him briefly as to the manner of execution of the will and as to the testator's mental condition at the time. There is no claim made that this testimony did not suffice to make out a prima facie case covering the two statutory issues of due execution and testamentary capacity in the sense that it was sufficient, if credited by the jury, to prove both issues. After the testimony of this single attesting witness, the proponents proposed to rest their case. At that point, the contestants objected and demanded that, before being permitted to rest their case, the proponents be required to call to the witness stand, and to examine on the issues of due execution and testamentary capacity, the other two attesting witnesses. The court overruled this claim, and the proponents rested. Thereupon, the contestants called the other two attesting witnesses, both of whom were in the courtroom, and examined them as part of their case in chief.

Expressions tending to support the contestants' position may be found in *Field's Appeal,* 36 Conn. 277, 280, *Dale's Appeal,* 57 Conn. 127, 132, 17 A. 757, *Barber's Appeal,* 63 Conn. 393, 401, 404, 27 A. 973, and *Jarboe* v. *Home Bank & Trust Co.,* 91 Conn. 265, 269, 99 A. 563. Expressions tending to support the proponents' position may be found in *Livingston's Appeal,* supra, 74, *Pope* v. *Rogers,* 93 Conn. 53, 55, 104 A. 241, and *Gilman's Appeal,* 115 Conn. 724, 725, 161 A. 845. As might be expected, in the light of these somewhat inconsistent expressions, the statements by text writers are indecisive. 1 Locke & Kohn, Conn. Probate Practice § 213; 2 Locke & Kohn, op. cit. §§ 282, 316; Cleaveland, Hewitt & Clark, Probate Law and Practice §§ 357, 385, 386; see also 1 Swift, Digest, p. 442.

As a matter of trial strategy, it may be that the proponents should ordinarily call all of the attesting witnesses available and within the reach of process and examine each to the extent, at least, of making out a prima facie case of due execution and testamentary capacity. On the other hand, this procedure is not the exclusive method of proving a will. *Pope* v. *Rogers,* supra. Especially is this so where, as here, the will contains the statutory affidavit as to due execution and testamentary capacity. General Statutes § 45-166; *Vivian's Appeal,* 74 Conn. 257, 259, 50 A. 797.

The sound rule is the one claimed by the proponents, that is, that they are not required as matter of law, even on demand by the contestants, to call to the witness stand and examine, to the extent necessary to make out a prima facie case of due execution and testamentary capacity, more than one of the attesting witnesses available and within the reach of process. *Gilman's Appeal,* 115 Conn. 724, 725, 161 A. 845; *Livingston's Appeal,* 63 Conn. 68, 75, 26 A. 470. But it is necessary for the proponents, if timely demand is made on them prior to the opening of the contestants' case, to have in court, subject to being called to the witness stand by the contestants, all of the attesting witnesses available and within the reach of process. See *Barber's Appeal,* 63 Conn. 393, 401, 27 A. 973; *Field's Appeal,* 36 Conn. 277, 280. The proponents did have in court the two attesting witnesses who were not called to the witness stand. This was all they were required to do, and there was no error in the court's ruling to that effect.

The contestants objected to the admission into evidence of a letter, purporting to be that of Max Shulman, which had been received by Attorney Al-

bert S. Bill, in answer to a letter which Attorney Bill had written and mailed to the testator. The letter had been produced by counsel for the contestants from his own files, on demand made upon him by counsel for the proponents, and was admitted to show the feelings of the testator toward the contestants. That the letter, if properly authenticated, was admissible for this purpose is obvious and is not questioned. The basic contention of the contestants, made at the time of the offer of the letter in evidence during the proponents' rebuttal, was that no proper foundation had been laid for the admission of the letter. The letter was typewritten and bore the signature of Max Shulman. During the cross-examination by the proponents of Attorney Cutler, a witness called by the contestants, the signature had been verified and the letter had then been marked for identification. Upon this foundation, it was within the court's discretion to admit the letter as an exhibit when it was subsequently offered in evidence by the proponents, since it had been, at least prima facie, properly authenticated under the familiar rule that where a writing is not witnessed, its authentication ordinarily requires proof merely of the signature of the writer. *Neil* v. *Miller,* 2 Root 117, 118; *Max Ams Machine Co.* v. *International Assn. of Machinists,* 92 Conn. 297, 305, 102 A. 706; Berman, "A Connecticut Commentary on Authenticating Private Documents," 28 Conn. B.J. 173, 176; 20 Am. Jur., Evidence, § 930; 32 C.J.S., Evidence, § 706 (a); 7 Wigmore, Evidence (3d Ed.) §§ 2134, 2135; see also *Fasanelli* v. *Terzo,* 150 Conn. 349, 358, 189 A.2d 500; 20 Am. Jur., Evidence, § 956.

Although this determination is dispositive of the

assignment of error adversely to the contestants, one further ground of objection to the admission of the letter perhaps should be mentioned. This ground was that the letter should not be introduced into evidence without "any opportunity of cross-examination" as to the circumstances surrounding the writing of the letter, namely, "who wrote . . . [the letter], where it was written, how it was written and the reason why it was sent." The letter was not actually admitted as an exhibit until just before the close of the proponents' rebuttal evidence, and at the time of its admission no witness was on the stand. No witness, however, was then needed since, as previously pointed out, the letter had already been sufficiently authenticated by Attorney Cutler, had been marked for identification, and was clearly relevant for the purpose for which it was received. The contestants did not make any request that the proponents keep Attorney Cutler available for further examination by the contestants in case the letter should be subsequently offered in evidence by the proponents. Obviously, the action of the proponents in having the letter marked for identification was purposeless unless they intended subsequently to offer it in evidence, and of course the contestants must have known this. It does not appear that the contestants made any effort, on their redirect examination of Attorney Cutler, or in any other way, to examine him as to the genuineness of the signature or of the letter.[1] Thus, they were not, and could not have been,

---

[1] It is hardly necessary to point out that such an examination would not have constituted an examination of a witness on the contents of a document not in evidence, in violation of our rule as laid down in cases such as *Johnson* v. *Charles William Palomba Co.*, 114 Conn. 108, 115, 157 A. 902; 58 Am. Jur., Witnesses, § 643. Rather, it would have constituted a preliminary or interlocutory examination

denied any opportunity for a proper examination of that witness.

Necessarily implicit in the second claim of inadmissibility urged by the contestants is an attempt to induce us to repudiate our rule, and the general rule, as to the order of evidence. It is true that the order of evidence lies largely in the court's discretion. *Hurlburt* v. *Bussemey,* 101 Conn. 406, 416, 126 A. 273; *Hennessy* v. *Metropolitan Life Ins. Co.,* 74 Conn. 699, 707, 52 A. 490. Yet ordinarily, the proponents would not be expected, nor should they be permitted, over objection, to offer this letter in evidence at the time it was authenticated and marked for identification, since that occurred in the middle of the contestants' case in chief. *Floyd* v. *Fruit Industries, Inc.,* 144 Conn. 659, 667, 136 A.2d 918; *Finch* v. *Weiner,* 109 Conn. 616, 619, 145 A. 31; *Finken* v. *Elm City Brass Co.,* 73 Conn. 423, 427, 47 A. 670; 4 Jones, Evidence (5th Ed.) § 908, p. 1700; 53 Am. Jur., Trial, §§ 115, 119. The proponents followed the proper procedure in withholding the offer of the letter for admission into evidence until they had reached the point in the trial of putting in their own rebuttal evidence.

If, as the contestants suggested at the time of its admission in evidence, the letter was probably typewritten by one other than Max Shulman himself, or if he lacked the command of English personally to dictate such a letter, the contestants, who comprised four of his seven children, could readily have offered evidence as to those matters, after the

restricted to the genuineness of the letter. *State* v. *Bradley,* 48 Conn. 535, 549; *Goodno* v. *Hotchkiss,* 88 Conn. 655, 663, 92 A. 419. Necessarily, such an examination, if it is to take place at all, must precede the actual admission of the letter into evidence. *Hurlburt* v. *Bussemey,* 101 Conn. 406, 414, 126 A. 273; *Neff* v. *Neff,* 96 Conn. 273, 279, 114 A. 126; 58 Am. Jur., Witnesses, § 637.

admission of the letter, to rebut the prima facie foundation for the admission of the letter which had been laid by the proponents through Attorney Cutler. See *Whalen* v. *Gleeson,* 81 Conn. 638, 642, 71 A. 908; 7 Wigmore, Evidence (3d Ed.) § 2135. Nothing along this line was attempted, nor was any effort made to recall, or to demand that the proponents recall, any witness for examination along the lines proposed, although as far as appears all witnesses having knowledge of such matters may still have been in the courtroom or otherwise readily available. See *Turner* v. *Scanlon,* 146 Conn. 149, 160, 148 A.2d 334; 4 Jones, Evidence (5th Ed.) § 893.

The contestants, in their brief, seem to have somewhat broadened their claims as to the inadmissibility of the letter beyond those advanced at trial. A claim not advanced at trial of course cannot be considered. *Salvatore* v. *Hayden,* 144 Conn. 437, 443, 133 A.2d 622. There was no error in the admission of the letter into evidence.

Albert Shulman, one of the proponents, was called as a witness by the contestants, and he testified on direct examination that he had received notices of stockholders' meetings of three family corporations called for the purpose of considering his removal as an officer and director of the corporations. He further testified that the meetings were not in fact held and that, on the date of the execution of the will, he still retained his positions as officer and director. On cross-examination, he was asked whether he continued to hold these positions after the execution of the will. The question was objected to on the ground that an event occurring after the execution of the will could not have affected the testator's actions as of the date of the

will. The court admitted the evidence. The effect of the contestants' direct examination was to leave the jury with the possible impression that whatever threats of removal Albert had received had been innocuous and, in turn, probably had not been taken seriously by the testator. It was within the broad discretion accorded the court in its control over the cross-examination to admit the question and forestall any erroneous impression which the jury might otherwise have obtained as to the significance of the actions of the contestants. The court could properly allow the proponents to inquire as to any facts which would tend to rebut or modify any material conclusion or inference resulting from the facts elicited on the direct examination. *Levine* v. *Marcus,* 90 Conn. 682, 684, 98 A. 348.

The contestants complain of certain evidential rulings connected with five promissory notes. Two of the notes, in the aggregate unpaid amount of $5000, were made by a family corporation known as The Newton Theater Company and were payable to Max Shulman. The other three notes, in the aggregate amount of $9000, were made by The Randolph Corporation, another family corporation, and were payable to Bella Shulman, the testator's wife. The proponents in their cross-examination of Albert Shulman, one of the proponents of the will, who had been called as a witness by the contestants, elicited evidence that one of the reasons the testator had developed an ill will toward his sons Maurice and Joseph was their wrongful refusal, as officers, to authorize the payment of interest by the corporate makers of the notes. The contestants, on their redirect examination, offered the notes in evidence to show that two of them by their terms carried no interest, so that any refusal to pay in-

terest on them was not wrongful. See General Statutes §§ 37-1, 37-3; *Santoro* v. *Osman,* 149 Conn. 9, 14 n., 174 A.2d 800. The court, suo motu, excluded the notes on the ground that their admission would confuse the jury. The notes were relevant to the subject matter of the cross-examination and should have been allowed in evidence. See *Canada's Appeal,* 47 Conn. 450, 464.

Thereafter, on recross-examination, Albert was questioned as to the practice of making interest payments on all the notes up until March, 1958. The question was objected to on the ground that the notes themselves were not in evidence, but the witness was allowed to answer. A cross-examination as to the contents of a writing should ordinarily not be permitted unless the writing is in evidence.[2] In the instant appeal, the cross-examination as well as the recross-examination consisted of questions at least relating to, if not actually involving, the contents of the notes, and little justification is apparent for the court's failure to follow the usual rule, especially when, on the recross-examination, the objection was based in part on that rule.

Even if the foregoing rulings were erroneous, however, it does not necessarily follow that there must be a new trial. An appellant has the burden of proving not only that an evidential ruling was erroneous but that it was probably harmful to him. *Casalo* v. *Claro,* 147 Conn. 625, 630, 165 A.2d 153, and cases cited. Here, the proponents' basic claim

---

[2] As is indicated in footnote 1, supra, the rule is inapplicable if the cross-examination is restricted to the preliminary question of the admissibility of the writing. An exception to the usual rule also exists where a witness on his direct examination refers to a document which has not been admitted in evidence. *Fine* v. *Moomjian,* 114 Conn. 226, 232, 158 A. 241.

was that the failure to pay interest on the notes had engendered ill feeling on the testator's part toward Joseph and Maurice. Even if the contestants had, through the notes themselves, succeeded in satisfying the court that two of them, by their terms, did not bear interest and that the jury should be so instructed, the fact would remain that the three others did bear interest and this fact would have supported the proponents' evidence of the testator's dissatisfaction with respect to the failure of Joseph and Maurice to authorize the payment of interest on them. The contestants have shown no probability that they were harmed by the rulings complained of.

The same witness, Albert, during his cross-examination by the proponents, testified that, at the testator's request, he and his sister Beatrice made a visit in June, 1958, to Maurice's office in an endeavor to present for payment certain of the notes made by the family corporations; that Maurice and Joseph, who had joined him, ordered Albert and Beatrice out of the office and refused payment of the notes; and that Albert and Beatrice then reported to the testator the outcome of the visit. Albert was then asked what, if any, comment his father made. The question was objected to on ground that the testator's declarations after the date of the execution of the will on March 19, 1958, could have no materiality as to his state of mind when the will was executed. The objection was overruled, and the witness answered that his father was very upset. Although the objection might properly have been sustained on the ground stated, the court had discretion, under the facts here, to admit the testator's statements for the light they shed on the issues of undue influence and testamentary

capacity, even though the visit and the testator's reaction to the report of it occurred after the date of execution of the will. See *Jackson* v. *Waller,* 126 Conn. 294, 301, 10 A.2d 763; *Dick* v. *Colonial Trust Co.,* 88 Conn. 93, 97, 89 A. 907. The testator's reaction was indicative of the importance in his mind, at the time he executed the will, of the actions of Joseph and Maurice in failing to authorize the corporations to honor the notes as to payments of interest.

The contestants complain of the court's failure to give a requested charge that the testator must know the contents of the instrument which he is signing and comprehend and understand its provisions, and that, if its provisions did not conform to his real desires, the paper he subscribed was not his will. Such a charge would have been more appropriate had the issue of mistake been raised by a proper pleading. See *Sansona* v. *Laraia,* 88 Conn. 136, 138, 90 A. 28. But apart from that, or any other consideration, such a charge would have been too broad. Few testators would fully comprehend the technical terminology which a skilled legal draftsman might insert in a relatively complicated will, as was this. If the testator understood and approved the purport and effect of the provisions of the will, it would not destroy its validity even if he did not fully understand, and could not have accurately explained to another, all of its technical phraseology.

The contestants excepted to the court's failure in its charge specifically to call the jury's attention to the fact that before the jury could consider a statement purportedly made by the testator as bearing on his state of mind they should first determine whether the statement had in fact been made by the

testator. Although the charge might have been improved had the court adopted the suggestion made in the exception, the preliminary instructions in the charge sufficiently covered the claim raised so that there is no reasonable ground for believing that the jury were misled.

There is no error.

In this opinion the other judges concurred.